**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:25 CR 79 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **TYLER LOOFBOURROW,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Defendant Tyler Loofbourrow is charged with a single count of unlawfully possessing a firearm in violation of 19 U.S.C. §§ 922(g)(9) and 924(a)(8). (Doc. 1, at 1). Presently before the Court is Loofbourrow's Motion to Dismiss the Indictment. (Doc. 18). The Government opposed (Doc. 19) and Loofbourrow replied (Doc. 20). The Court held an oral argument on the motion on October 8, 2025. For the reasons set forth below, the Court DENIES Loofbourrow's Motion to Dismiss the Indictment.

### BACKGROUND

In February 2024, Loofbourrow plead no contest to, and was subsequently found guilty of, one count of domestic violence pursuant to Ohio Revised Code § 2919.25(A), a first-degree misdemeanor. *See State of Ohio v. Tyler Loofbourrow*, No. CRB-23-12193-0102 (Toledo Mun. Ct.). The criminal complaint associated with Loofbourrow's state domestic violence conviction, attached by Loofbourrow to his reply brief, alleges Loofbourrow "did slap his [name & relation

redacted] across her face."[1] (Doc. 20-1). The indictment alleges Loofbourrow, while knowing he had been convicted of the aforementioned domestic violence offense, knowingly possessed a Glock 21 .45 caliber semiautomatic pistol. (Doc. 1, at 1).

Loofbourrow argues § 922(g)(9) is facially unconstitutional and unconstitutional as applied to him, and therefore the Indictment fails to allege the commission of a valid federal offense. *See* Doc. 18, at 1; Fed. R. Crim. P. 12(b)(3)(B)(v). Because Loofbourrow's facial challenge to § 922(g)(9) is foreclosed by binding Circuit precedent, *see United States v. Gailes*, 118 F.4th 822, 829 (6th Cir. 2024), the Court addresses only his as-applied challenge.

## STANDARD OF REVIEW

A motion brought pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) tests only whether the indictment fails "to state an offense" cognizable under federal law. Like a motion to dismiss in the civil context, the court "presumes the truth of [the] facts as alleged in an indictment" and tests only its legal sufficiency. *United States v. O'Bannon*, 2025 WL 1039141, at *3 (W.D. Ky.) (citing *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc)). In ruling on a motion to dismiss, the Court may also "take judicial notice of facts which are not subject to reasonable dispute." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005); *accord* Fed. R. Evid. 201(b). In the context of as-applied challenges to § 922(g), such judicially noticeable

---

1. The only detail offered regarding the nature of the relationship between Loofbourrow and the victim is the Government's statement that Loofbourrow "has a child in common" with the victim. (Doc. 19, at 20). The criminal complaint redacted the name of the victim and any indication regarding the nature of her relationship to Loofbourrow. During the hearing on the instant motion, Loofbourrow did not object to the Court's assertion that the victim was Loofbourrow's "domestic partner" and the "mother of his child." (Transcript Rough Draft at 5).

information includes "any evidence of past convictions in the record." *United States v. Williams*, 113 F.4th 637, 660 (6th Cir. 2024).[2]

**DISCUSSION**

<u>Initial Doctrinal Arguments</u>

Loofbourrow offers two primary doctrinal arguments in his motion. First, he argues the burden-shifting framework adopted by the Sixth Circuit for as-applied challenges to § 922(g)(1) does not apply to such challenges to § 922(g)(9). *See* Doc. 18, at 4; Doc. 20, at 3; *Williams*, 113 F.4th at 657–58. Second, Loofbourrow argues the Court should apply the standard for constitutional disarmament announced by the Supreme Court in *United States v. Rahimi* rather than the standard as applied by the Sixth Circuit in *Williams*. Specifically, Loofbourrow contends the operative question should be whether he "poses 'a credible threat to the physical safety of another[,]'" (Doc 18, at 4) (quoting *United States v. Rahimi*, 602 U.S. 680, 702 (2024)), not whether he is "dangerous[,]" *Williams*, 113 F.4th at 657. The Court addresses each argument in turn before turning to the merits of Loofbourrow's as-applied challenge to § 922(g)(9).

*The* Williams *Framework*

Following the Supreme Court's decision *Rahimi*, the Sixth Circuit in *Williams* assessed § 922(g)(1), which permanently bars convicted felons from possessing firearms, in the context of both a facial and as-applied challenge. *See Williams*, 113 F.4th at 642–43. Relying on similar sources as the Court in *Rahimi*, including surety regimes, going armed laws, as well as those laws disarming entire classes of people thought to be dangerous, the Sixth Circuit derived a general principle that Congress may permanently disarm entire classes of individuals "deemed to be

---

2. While the existence of Loofbourrow's prior conviction is judicially noticeable for the purposes of this motion, its existence, and any other judicially noticeable facts discussed in this opinion, need not be conclusively accepted by a jury. *See* Fed. R. Evid. 201(f).

3

dangerous" in order to protect the peace. *Id.* at 650, 652–53, 657. In each analogous historical circumstance, members within the targeted class had an opportunity to "demonstrate that their particular possession of a weapon posed no danger to peace." *Id.* at 657. And each defendant charged with violating § 922(g)(1) similarly had the opportunity to bring an as-applied challenge thereto. *Id.* If a defendant brings such a challenge, they bear the burden of demonstrating they fall outside the class of dangerous felons that may lawfully be disarmed. *Id.* at 657–68. The decision to place the burden on the defendant bringing an as-applied challenge to § 922(g)(1) marked a shift from the Supreme Court's general pronouncement that the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 17 (2022).

The Sixth Circuit's decision in *Gailes*, which sustained § 922(g)(9) against a facial challenge, relied on similar historical sources to conclude individuals who pose a clear threat of physical danger to others may be disarmed on a permanent, class-wide basis. *Gailes*, 118 F.4th at 828. The defendant in *Gailes* did not bring an as-applied challenge to § 922(g)(9), so the court did not directly weigh in on whether the burden-shifting framework from *Williams* operated in as-applied challenges to § 922(g)(9). Subsequent Sixth Circuit decisions addressing as-applied challenges to § 922(g)(9) have not weighed in on the applicability of the *Williams* burden-shifting framework nor explicitly held a defendant bears the burden to demonstrate they fall outside the class of individuals Congress has otherwise validly subjected to disarmament. *See United States v. Odom*, 2024 WL 5002655, at *1 (6th Cir.); *United States v. Martin*, 2025 WL 1913185, at *3 (6th Cir.).

Another Judge of this Court has, however, explicitly held the *Williams* burden-shifting framework operates in as-applied challenges to § 922(g)(9). *See United States v. Peppers*, 2024

WL 5202640, at *1–2 (N.D. Ohio). The Court is persuaded by the reasoning of *Peppers*. Specifically, *Peppers* reasoned that the *Gailes* and *Williams* courts relied on largely the same historical sources to reach the same general conclusion: Entire classes of individuals may, consistent with the Second Amendment, be disarmed by Congress based on a finding that members of the class pose a sufficient danger or threat to others. *Peppers*, 2024 WL 5202640, at *2 ("[F]ocusing on the 'general, historical analogues' on which the *Williams* court relied to uphold the 'categorical' disarmament of felons, *Gailes* likewise upheld § 922(g)(9), which 'categorically disarms individuals with valid, domestic-violence convictions.'") (quoting *Gailes*, 118 F.4th at 828) (citation modified). Put simply, where the same historical analogues justify the same class-wide and categorical disarmament, the same burden shift applies. Thus, the burden rests with Loofbourrow to demonstrate he is not a member of the class of dangerous or threatening individuals that may be disarmed consistent with the Second Amendment. Remaining is the question of what standard under which Loofbourrow must make such a showing.

*The Governing Standard*

The Government contends Loofbourrow bears the burden to rebut the "class-wide presumption of *dangerousness*, which attaches by virtue of his prior domestic violence conviction." (Doc. 19, at 20) (citing *Williams*, 113 F.4th at 657 and *Gailes*, 118 F.4th at 828) (emphasis added). Contrarily, Loofbourrow asserts the "dangerousness" test from *Williams* "is too broad" and the proper standard for determining whether he may be constitutionally disarmed is whether he poses a credible or "clear threat of physical violence to another." (Doc. 20, at 4–5) (quoting *Gailes*, 118 F.4th at 828). Initially, the Court is skeptical there is any meaningful daylight between a "dangerousness" and "clear threat" standard governing Loofbourrow's burden in the context of a § 922(g)(9) challenge. *Compare Odom*, 2024 WL 5002655, at *1 ("[The defendant]

5

violently assaulted his girlfriend multiple times, meaning that he 'falls squarely within the category of people who pose a clear threat to the physical safety of others' and therefore may be disarmed without offending the Second Amendment.") (quoting *Gailes*, 118 F.4th at 830), *with Martin*, 2025 WL 1913185, at *3 ("The record below establishes that [the defendant] was convicted of domestic violence after pushing and repeatedly punching the mother of his children. [The defendant's] domestic violence offense therefore squarely fits *Williams*' definition of 'dangerous' because it 'demonstrates . . . that he has committed 'violent' crimes 'against the person.'"")) (quoting *United States v. Morton*, 123 F.4th 592, 500 (6th Cir. 2024)); *see also United States v. Watson*, 2025 WL 833246, at *2 (6th Cir.) (explaining the defendant's domestic violence conviction under Ohio Rev. Code. § 2919.25 "support[ed] a finding of dangerousness under § 922(g)(1) as applied to him" and thus rendered such application constitutional).

Regardless of the particular language chosen, however, Loofbourrow's burden is to demonstrate his predicate misdemeanor domestic violence conviction did not involve sufficient *violent contact* with another such that he may deemed either dangerous or a clear threat to the safety of others. *Gailes*, 118 F.4th at 829 ("Because there are numerous domestic-violence misdemeanors that do involve violent, physical contact, our Nation's history and tradition support [the] conclusion that § 922(g)(9) 'is constitutional in some of its applications.'") (quoting *Rahimi*, 602 U.S. at 693).

*Evidentiary Issues*

Finally, while not directly addressed by the parties, the Court must determine what evidence it may consider when deciding whether Loofbourrow's predicate domestic violence conviction renders his disarmament pursuant to § 922(g)(9) lawful. *See United States v. Banks*, 2025 WL 2243968, at *3–4 (N.D. Ohio). In addition to information contained in the Indictment,

the Court may consider judicially noticeable information, including matters of public record such as prior convictions. *Williams*, 113 F.4th at 660. For Loofbourrow, this means the Court may consider the matters of public record associated specifically with his domestic violence conviction. While the Court may take judicial notice of the existence of Loofbourrow's prior conviction, it generally may not take notice of disputable facts contained within the judgment of conviction. *See, e.g., United States v. Garland*, 991 F.2d 328, 332–33 (6th Cir. 1993) (taking judicial notice of the existence of a foreign judgment but declining to "judicially notice the truth of the statements contained in the [foreign] judgment because some of these facts may remain in dispute"); *but see Morton*, 123 F. 4th at 500 (considering the substance of criminal judgments which "explicitly referred to the nature of the offense[s] as 'dangerous' or 'violent'").

Here, however, the Court need not independently assess whether facts associated with Loofbourrow's predicate conviction are subject to reasonable dispute. *Garland*, 991 F.2d at 332–33; *Passa*, 123 F. App'x at 697. Instead, Loofbourrow's own plea in his predicate domestic violence case, which is a matter of public record and subject to judicial notice, *see, e.g.*, *Peppers*, 2024 WL 5202640, at *3, establishes the truth of the information contained in the associated criminal complaint. Loofbourrow pled no contest to the domestic violence charge brought pursuant to Ohio Rev. Code § 2919.25(A). *See State of Ohio v. Tyler Loofbourrow*, No. CRB-23-12193-0102 (Toledo Mun. Ct.) (Feb. 21, 2024, docket entries). Under Ohio law, a no contest plea "is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the . . . complaint[.]" Ohio Crim. R. 11(B)(2). In effect, Loofbourrow admitted, as a matter of public record, the truth of allegation that he "slap[ped] his [name & relation redacted] across her face." (Doc. 20-1). The Court therefore concludes it may consider these facts in determining whether § 922(g)(9) is constitutional as applied to him. *See Morton*, 123 F.4th at 499 (explaining the Court

7

may "consider how an offense was committed" in ruling on an as-applied challenge to § 922(g)(1)).

Loofbourrow does not appear to challenge this conclusion, as he attached the criminal complaint

to his reply brief, *see* Docs. 20; 20-1, and only attempts to distinguish the conduct described therein

from that of the defendant in *Rahimi*. *See* Doc. 20, at 5.[3] Further, the Court considers relevant the

amount of time elapsed between Loofbourrow's predicate domestic violence conviction and his

possession of the firearm at issue in this case, *see Banks*, 2025 WL 2243968, at *7, and takes

judicial notice of the date of Loofbourrow's predicate conviction, *see State of Ohio v. Tyler

Loofbourrow*, No. CRB-23-12193-0102, (Toledo Mun. Ct.) (Feb. 21, 2024, docket entries).

However, despite the Government's invitation to do so, the Court declines to consider any

information contained in the police report associated with Loofbourrow's predicate conviction.

The Government offers two pieces of evidence to demonstrate Loofbourrow's conviction for

domestic violence represents more than a "singular incident" of violent conduct. (Transcript Rough

Draft at 18–19). Specifically, the Government points to a police report produced in discovery it

claims contains a statement by Loofbourrow's daughter to police that "[m]y dad slaps my mom all

of the time and I don't like [it]." (Doc. 19, at 20). Loofbourrow is then alleged to have corroborated

this report by telling the arresting officers he had "slapped the victim on multiple occasions." *Id.*

District Courts within the Sixth Circuit are split as to whether the information in such reports is

susceptible to judicial notice when assessing an as-applied challenge to a § 922(g) charge.

*Compare United States v. Sykes*, 2025 WL 52737, at *1 n.1, *2 n.3 (M.D. Tenn.) (accepting as true

the allegations contained in a police report when ruling on a pre-trial as-applied challenge to §

922(g)(1)) *with United States v. Johnson*, 764 F. Supp. 3d 566, 572 (E.D. Mich. 2025) (declining

---

3. Further, during argument on the present motion, counsel for Loofbourrow stated "what Mr. Loofbourrow was actually convicted of was, and again, we are not undermining it, but a slap[.]" (Transcript Rough Draft at 12).

to consider portions of a presentence report incorporating police reports that "may include allegations of uncharged conduct, hearsay, and similar information whose reliability cannot be assumed"); *see O'Bannon*, 2025 WL 1039141, at \*3 n.4 (collecting cases). Statements by third parties reproduced in a police report constitute "hearsay within hearsay" and would be inadmissible at trial. *See Miller v. Field*, 35 F.3d 1088, 1091–92 (6th Cir. 1994); Fed. R. Evid. 803(8). The Court cannot conclude that such "unsworn and potentially unreliable[,]" *O'Bannon*, 2025 WL 1039141, at \*3 n.4, statements are nevertheless "not subject to reasonable dispute" and thus judicially noticeable, *Passa*, 123 F. App'x at 697; Fed R. Evid. 201.[4]

Application to Loofbourrow

In light of the information contained in the criminal complaint associated with Loofbourrow's predicate domestic violence conviction, Loofbourrow falls short of his burden to demonstrate § 922(g)(9) is unconstitutional as applied to him. Again, applying the *Williams* framework to Loofbourrow's § 922(g)(9) challenge means Loofbourrow must rebut the "class-wide presumption" that he may be lawfully disarmed on the basis of his predicate domestic violence conviction. *Williams*, 113 F.4th at 657; *Peppers*, 2024 WL 5202640, at \*1–2. Loofbourrow argues multiple factors support a finding he is not dangerous and does not present a credible threat to the physical safety of others. First, Loofbourrow is a "lifelong resident of Toledo

---

4. The Court also declines, for the purposes of this motion, to consider the Government's allegation that the firearm possessed by Loofbourrow was stolen. *See* Transcript Rough Draft at 15–17. The Government is correct to point out some courts have found possession of a stolen weapon is not conduct protected by the Second Amendment. *See, e.g.*, *United States v. Wright*, 2024 WL 422156, at \*3 (E.D. Tenn.) (collecting cases but ultimately finding the possession of a stolen weapon for lawful purposes such as self defense is protected conduct). However, the Government did not charge Loofbourrow with violating § 922(j), the Indictment does not allege the firearm was stolen, and no judicially noticeable information suggests as much. The absence of such an allegation does not prevent the Government from ultimately demonstrating, by a preponderance of the evidence, Loofbourrow possessed a stolen firearm. *See United States v. Aleo*, 681 F.3d 290, 298 (6th Cir. 2012).

with a lengthy work history with his current employer." (Doc. 18, at 4). Second, Loofbourrow seeks to distinguish his own offense conduct from that of the defendant in *Rahimi*. (Doc. 20, at 5). Third and finally, Loofbourrow claims he has not "demonstrated repeat or escalating violence" as "[h]e has no further convictions for domestic violence." *Id.*

To Loofbourrow's first and third points, the recency of his predicate domestic violence conviction undermines any persuasiveness commanded by his work history, longstanding presence in the community, or post-conviction peacefulness. Loofbourrow was convicted of the predicate domestic violence misdemeanor on February 21, 2024. *See State of Ohio v. Tyler Loofbourrow*, No. 2CRB-23-12193-0102, (Toledo Mun. Ct.) (Feb. 21, 2024, docket entries). Loofbourrow is alleged to have been in possession of a firearm in violation of § 922(g)(9) on or about October 1, 2024, less than six months after his domestic violence conviction. (Doc. 1, at 1). In fact, Loofbourrow was still serving a term of probation on his predicate domestic violence conviction when he is alleged to have possessed a firearm. *See State of Ohio v. Tyler Loofbourrow*, No. CRB-23-12193-0102, (Toledo Mun. Ct.) (Feb. 21, 2024, docket entries) (imposing a nine-month term of active probation ending November 21, 2024); *cf. United States v. Goins*, 118 F.4th 794, 798 (6th Cir. 2024) ("This Nation's historical tradition demonstrates that Congress may lawfully disarm probationers . . . under a relatively short probation sentence for a dangerous crime[.]"). Thus, any longstanding presence, work history, or peaceful conduct after the *Williams* presumption attached is negated by the immediacy of Loofbourrow's domestic violence conviction. Post-offense conduct, particularly where the predicate conviction occurred multiple years before the defendant possessed a firearm, may support a finding the defendant cannot be disarmed consistent with the Second Amendment. *See Banks*, 2025 WL 2243968, at *10. Here, however, even taking Loofbourrow's factual contentions as true, the brief period of time elapsed between his predicate

conviction and alleged firearm possession negates the weight due to any post-offense conduct tending to demonstrate he is not dangerous or a credible threat to the safety of others. Additionally, Loofbourrow's post-offense conduct is not all positive. Just one day before the hearing on the instant motion, Loofbourrow was found by a Pretrial Services and Probation Officer to have violated the terms of his supervised release by consuming alcohol. (Doc. 21, at 1). This resulted in the termination of Loofbourrow's residence at an inpatient substance abuse treatment center. *Id.* at 1–2. In sum, the Court concludes Loofbourrow's conduct outside the scope of his domestic violence offense is insufficient to rebut the presumption he may be lawfully disarmed as a result of his predicate domestic violence conviction.[5]

Loofbourrow's second point fares no better. While it is true Loofbourrow's offense conduct is "distinguishable from" the conduct described in *Rahimi*, (Doc. 20, at 5), nothing in *Rahimi* suggested the conduct described therein served as a floor for determining what level of severity was necessary to lawfully disarm those engaged in domestic violence. *See Rahimi*, 602 U.S. at 693 (finding § 922(g)(8) to be constitutional in at least "some of its applications" including as applied to "the facts of Rahimi's own case"). Some predicate convictions pursuant to Ohio Rev. Code. § 2919.25(A) may pose a close call as to whether a defendant may fairly be deemed to pose such a threat. *See, e.g.*, *State v. Younker*, 2002 WL 31242238, at *1, 3 (Ohio Ct. App.) (upholding a defendant's conviction under this statute after a jury found he "threw two empty pop cans at [his wife] from a distance of three to four feet away" and that "[t]he cans struck [his wife] on the knee"). This is not one of them. Rather, Loofbourrow's offense conduct, specifically his decision to slap the victim across her face, is sufficient to place him "squarely within" the class of individuals who

---

5. The Court reaches this conclusion assuming, without deciding, that Loofbourrow need only rebut the presumption by a preponderance of the evidence. *See Banks*, 2025 WL 2243968, at *8.

11

pose a clear, credible threat to the physical safety of others. *Odom*, 2024 WL 5002655, at *1. Loofbourrow's domestic violence misdemeanor conviction "involve[d] violent, physical contact" such that he may be disarmed consistent with the Second Amendment. *Gailes*, 118 F.4th at 829.

In sum, the Court finds Loofbourrow has failed to carry his burden to demonstrate that, despite his predicate domestic violence conviction pursuant to Ohio Rev. Code. § 2919.25(A) and the physically violent offense conduct associated therewith, he is not dangerous or a credible threat to the safety of others. Section 922(g)(9) is therefore constitutional as applied to him.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Dismiss the Indictment (Doc. 18) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*  
UNITED STATES DISTRICT JUDGE

Dated: October 22, 2025